OSCN Found Document:ROUSE v. OKLAHOMA MERIT PROTECTION COMMISSION

OSCN navigation

Home

Courts

Court Dockets

Legal Research

Calendar

Help

Previous Case

Top Of Index

This Point in Index

Citationize

Next Case

Print Only

ROUSE v. OKLAHOMA MERIT PROTECTION COMMISSION2015 OK 7Case Number: 112637Decided: 02/17/2015As Corrected: February 19, 2015THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2015 OK 7, __ P.3d __

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL
RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL.

CHESTER ROUSE, Petitioner,v.OKLAHOMA MERIT PROTECTION
COMMISSION, AND GRAND RIVER DAM AUTHORITY, Respondents.

APPEAL FROM THE DISTRICT COURT OF MAYES COUNTY
Honorable Rebecca J. Gore, Trial Judge

¶0 The Grand River Dam Authority terminated the employment of the petitioner,
Chester Rouse, after several years of evaluations of inefficiency, incompetence,
and misconduct, and after three significant events which occurred at its coal
fired plant. Rouse appealed the termination to the Oklahoma Merit Protection
Commission and then to the district court. The administrative appeal and the
district court appeal each resulted in the affirmation of the termination. Rouse
appealed and we retained the appeal, and affirm the administrative appeal and
the trial court.

OKLAHOMA MERIT PROTECTION COMMISSION AFFIRMED;
TRIAL COURT AFFIRMED.

James C. Thomas, William D. Thomas, Tulsa, Oklahoma, for Appellant.J.
Heath Lofton, Vinita, Oklahoma, for Appellee.

KAUGER, J.:
¶1 This is the second appeal resulting from the Grand River Dam Authority's
(GRDA) termination of the appellant, Chester Rouse (Rouse/employee). The first
case, Rouse v. Grand River Dam Authority, 2014 OK 39, 326 P.3d 1139, involved the issues
of whether the employee: 1) was barred by sovereign immunity from bringing a
federal claim under the Fair Labor Standards Act, 29 U.S. C. §§201 et seq.; and
2) could assert a tort claim under Oklahoma law. The unanimous Court affirmed
the trial court's dismissal of the employee's lawsuit because we determined that
legislatively authorized administrative remedies were available through an
appeal to the Oklahoma Merit Protection Commission (OMPC). The employee appealed
to the OMPC, and then to the district court. This cause concerns the employee's
appeal of the district court's order upholding the GRDA's termination of
Rouse.
¶2 The employee raises 16 issues in his petition in error, some of which are
either redundant, repetitive, related,1 or were not briefed on appeal.2 We consolidate the
allegations of error into four succinct, broader encompassing issues. The four
determinative issues are whether the trial court erred in: 1) its statutory
interpretation and application of 74 O.S. 2011 §840-6.5;3 2) determining that the
reasons for termination were not pretextual, or post hoc rationalizations; 3)
determining that the employee was estopped from challenging the level of
discipline imposed (termination); and 4) its review of the OMPC's ruling and the
introduction of evidence. After consideration of all of the dispositive issues,
we affirm the trial court.
FACTS
¶3 The appellee, the GRDA terminated the employment of the appellant, Chester
Rouse (Rouse/employee) on February 17, 2012. The GRDA had employed Rouse at its
electricity generating, coal fired plant in Chouteau, Oklahoma, since May of
1982. Rouse started as an auxiliary equipment operator, and in 1984 he was
promoted to the position of control room operator where he remained until 2005.
In November of 2005 he was made operations shift supervisor, a position in which
he remained until he was terminated. Nothing in the record indicates specific
performance issues during his tenure at GRDA prior to 2005. However, it appears
that after he was placed in the position as of shift supervisor in November of
2005, his performance became a reoccurring issue.
¶4 In 2006 and 2007, his evaluations noted he was taking a lot of extra time
on smoke breaks. In 2008, he was told that he was wasting excessive time smoking
and reading fictional books while on duty. Apparently, Rouse spent so much time
in the designated smoking room, the room became referred to as "Jay's Office" by
other employees. Rouse's 2008 performance reviews rated him as needing
improvement, inefficient, guilty of misconduct, and needing to set a better
example for his crew. His 2009 evaluations again noted the need to set a better
example for his crew.
¶5 Rouse was suspended without pay for seven working days on July 19, 2010.
The reasons given for the suspension included: wasting time smoking and reading
fictional books at work, having evaluations rated as needing improvement because
of inefficiency and misconduct, lack of setting a good example for employees,
negative and unprofessional behavior, and using bitter language. The GRDA
initially considered a ten day suspension, but reduced it to only seven days
after Rouse expressed remorse and commitment to improve in behavior and
leadership.
¶6 At the time of his discharge, Rouse was a classified employee. The GRDA
provided Rouse with notice of proposed disciplinary action of termination on
January 11, 2012, and a pre-termination hearing was conducted on January 20, and
February 6, 2012, giving Rouse an opportunity to respond. By letter dated
February 17, 2012, Rouse was officially terminated based on Merit Rule
530:10-11-914
and 74 O.S. 2011 §840-6.5.5
¶7 The letter stated that Rouse was being terminated for inefficiency,
misconduct, insubordination, inability to perform the duties of the position,
and violations of the Oklahoma Personnel Act. Additionally, it referenced
specific instances such as Rouse's: 1) incomplete work task assignment from
August of 2011; 2) incompetence in handling an alarm event occurring on December
13, 2011; and 3) inattentiveness to a costly tube leak/overflow event on
December 14, 2011. It also referenced the fact that staff members reported that
Rouse was regularly unable to identify key problems and take the necessary
actions appropriate for his position and it referenced the prior suspension
without pay in 2010.
¶8 Just prior to the termination, on December 1, 2011, the GRDA got a new CEO
and Director of Investments, Dan Sullivan (CEO). On December 15, 2011, the day
after a significant flooding event had occurred and two days after a significant
boiler chemistry event had occurred, Sullivan met with Rouse at Rouse's request.
Apparently, Rouse requested to switch to an unclassified position, a switch
which he previously had been denied. In an otherwise cordial meeting, Sullivan
testified at the very end of their meeting Rouse made veiled threats about
taking further action on a wage claim, but he really did not recall exactly what
was said or explain what he meant by "veiled threats."
¶9 After receiving the February 17, 2012, termination letter, Rouse contacted
the GRDA's human resources department about retiring in lieu of termination.
Even though he was terminated, the GRDA's CEO, Sullivan, in deference to his
years of service, accommodated Rouse by halting the termination and permitting
him to retire instead, and even waiving the sixty day notice period. As a
result, Rouse secured thousands more than he would have had he been terminated
including his full salary and longevity pay until his retirement date of March
1, 2012, in addition to other retirement benefits such as an insurance subsidy
of $200.00 that is not available to terminated employees.
¶10 The employee appealed his termination to the OMPC on March 9, 2012,
alleging that he was fired as retaliation for cooperating with a Department of
Labor (DOL) investigation which had resulted in the GRDA having to pay some
employees back wages in May of 2010, for asking employees to show up 10-15
minutes before their shifts started so that they would start their shifts on
time. The time frame for the back wages was January of 2008 to January of 2010.
Rouse received a total of $506.10 before taxes as a result of the
investigation.6
¶11 On appeal, Rouse sought reinstatement, as well as back pay and a
promotion to an unclassified position. An administrative law judge (ALJ) held a
two day trial on June 13-14, 2013, and issued a final order on August 16, 2013,
finding that the GRDA had proven, by a preponderance of the evidence, just cause
to discipline the employee for insubordination, inefficiency, and inability to
perform his duties and that the discipline imposed was just.
¶12 During the proceeding, the GRDA argued that Rouse had agreed to waive an
appeal to the OMPC in exchange for being allowed to retire rather than be
terminated. However, the judge determined there was insufficient evidence of a
"meeting of the minds" to such an agreement which would bar an appeal, but that
Rouse accepted the benefits of retirement without taking any steps to clarify
any misunderstanding even after the GRDA took steps to advice Rouse and his
attorney of its understanding that an appeal right was waived. Accordingly, the
judge determined the Rouse should be estopped from challenging the level of
dicipline imposed (termination) but that even if such estoppel were
inapplicable, the cumulative effect of his misconduct, the serious nature of the
incidents concerned, and Rouse's refusal to acknowledge his misconduct or take
any responsibility thereof justified termination.
¶13 On October 1, 2013, the OMPC issued its final order upholding the ALJ's
decision and denying reconsideration. On October 7, 2013, the employee filed a
petition for judicial review in the District Court of Mayes County, Oklahoma.7
¶14 On February 20, 2014, the trial court affirmed the ALJ and OMPC. On March
11, 2014, the employee filed an appeal and on June 5, 2014, filed a motion for
this Court to retain the cause. We granted the motion to retain on June 19,
2014, and the cause was assigned to this office on November 13, 2014. This Court
has long been committed to the rule that an administrative decision will be
affirmed on appeal if it is supported by substantial evidence8 and it is not arbitrary or
capricious.9
PURSUANT TO 74 O.S. 2011 §840-6.5, WILLFULNESS
ORCULPABLE NEGLIGENCE IS NOT REQUIRED TO JUSTIFY
TERMINATION FOR JUST CAUSE.
¶15 The employee argues that: 1) pursuant to 74 O.S. 2011 §840-6.5,10 the GRDA
must prove that the employee acted with an element of willfulness or culpable
negligence to justify any cause for termination of a classified employee; and 2)
because the GRDA offered no specific evidence of Rouse's willful conduct or
culpable negligence, the termination must be reversed. The GRDA contends that
such intent or culpability is not required.
¶16 The pertinent language of 74 O.S. 2011 §840-6.5 provides that:

Any employee in the classified service may be discharged . . . for
misconduct, insubordination, inefficiency, habitual drunkenness, inability
to perform the duties of the position in which employed, willful violation
of the Oklahoma Personnel Act, the Merit Rules for Employment or of the
rules prescribed by the Oklahoma Merit Protection Commission, conduct
unbecoming a public employee, conviction of a crime involving moral
turpitude, or any other just cause. .
The purpose of the OMPC is to encourage prompt and equitable resolutions of
grievances at the lowest possible level and encourage resolution of disputes
quickly and informally.11 It also provides a system for the prompt, fair,
and equitable disposition of appeals by employees.12
¶17 The statute is plain and unambiguous. When a statute is plain and
unambiguous, there is no need to resort to statutory construction13 nor does
any justification exist for the use of interpretive devices to fabricate a
different meaning.14 The class of employees affected by the statute is
clearly classified employees. Such employees can be discharged for any of a
litany of things. The only conduct requiring willful behavior under the clear
terms of the statute is "willful violation of the Oklahoma Personnel Act, the
Merit Rules for Employment or of the rules prescribed by the Oklahoma Merit
Protection Commission." Nothing in the terms of the act or its stated purposes
or any previous decision by this Court requires that an employee terminated for
"just cause" must, as Rouse argues, have been proved to have acted with an
element of willfulness or culpable negligence. Accordingly, neither the OMPC nor
the district court erred in refusing to infuse such a requirement into this
cause.
THE RECORD REFLECTS THAT THE GRDA'S REASONS FOR
TERMINATION WERE NEITHERPRETEXTUAL NOR POST HOC
RATIONALIZATIONS.
¶18 The OMPC found that, despite the employee's valiant efforts to establish
that the termination was pretextual to cover the CEO's alleged real motivation
for firing Rouse as retaliation for filing a wage claim, there was "simply no
evidence to support this." The trial court determined that he failed to
establish any pretext because Rouse admitted to: 1) not completing the
assignment given to him in August of 2011; 2) neglecting to check the equipment
during his shift on December 14, 2011 and; 3) he did not specifically instruct
his crew to check the equipment. Additionally, the trial court found that
because of these same admissions by Rouse, he failed to demonstrate that the
offered reasons for termination were post hoc rationalizations.
¶19 Rouse argues that the evidence is clear that his supervisors had
knowledge that he complained to the DOL for not getting paid to show up for
shifts 10-15 minutes early, and that it was not until he did complain, that, for
the first time during his thirty year tenure, he faced discipline. He also
insists that he was targeted to be discharged. GRDA argues that it had multiple,
valid reasons for discharge unrelated to any DOL complaint and that the reasons
for supporting discharge have been consistent with his poor evaluations.
¶20 Pretextual reasons for an employer's termination of an employee come into
question when an employee is alleged to have been terminated in retaliation for
things such as filing a workers compensation claim,15 or, in retaliation for reporting an
employer's violation of the law and/or public policy.16 An employer can rebut an employee's
claim by showing that the discharge was for a legitimate non-retaliatory reasons
which obviously includes the inability to perform the assigned duties.17 This is
precisely what the GRDA did in this cause.
¶21 The only evidence in the record supporting Rouse's claim that supervisors
and the CEO knew that he filed a complaint with the DOL and that he was fired in
retaliation for doing so, was Rouse's own "because I said so" testimony.18 This
evidence is countered with substantial evidence of years of inefficiency,
insubordination, and inability to perform the duties of his position, all of
which were admitted to by Rouse. The wage claim was resolved by 2010, nearly two
years before Rouse was terminated, and no one knew who actually called the DOL
to complain about not getting paid for showing up 15 minutes early.
¶22 Additionally, the cited reasons for termination were supported by
testimony and documentation because Rouse: 1) failed to complete a work
assignment that every other supervisor managed to complete on time; 2) was
inattentive and failed to react to a severe water chemistry condition on
December 13, 2011; and 3) failed to take action during a water leak on December
14, 2011, that destroyed and damaged equipment.19 The GRDA was entitled to terminate
Rouse for just cause and it appears that it did so and the employee has made no
showing otherwise. Even if the three reasons as stated above had not occurred,
the employee's inefficiency of the repetitive behavior of wasting time smoking
and reading year after year while at work would have been more than adequate
just cause for termination. Accordingly both the trial court and the OMPC are
affirmed on this issue.
THE APPLICATION OF ESTOPPEL IS IMMATERIAL.
¶23 The employee was allowed to appeal his termination, despite accepting
retirement benefits in lieu of termination. However, he argues that he should
not have been estopped from challenging the level of discipline imposed --
termination. He also contends that applying estoppel would be unfair and
contrary to public policy in this cause. The GRDA argues that whether estoppel
was appropriately applied to this cause is immaterial. We agree.
¶24 Estoppel is an equitable doctrine used to prevent one party from taking a
position which is inconsistent with an earlier action that places the other
party at a disadvantage.20 The employee was not estopped from appealing his
termination and the GRDA's decision to terminate was supported by the evidence
and was not arbitrary or capricious. Had Rouse's conduct, insubordination,
inefficiency and inability to perform his duties not justified termination, then
the application of estoppel may have been material to determining what level of
discipline, if any, was appropriate. Nevertheless, the ALJ additionally
determined that regardless of the applicability of estoppel, termination was
appropriate.
¶25 Even if estoppel were incorrectly applied to this cause, because the
GRDA's decision to terminate was supported by sufficient evidence, the
application of estoppel was immaterial. Furthermore, the employee, while being
represented by his attorney, accepted all the benefits of retirement and the
financial effects of the termination were abandoned by the GRDA. If estoppel
were applicable to this cause, it is the GRDA who should have been able to rely
on it. However, the doctrine of estoppel is not ordinarily applicable to state
agencies operating under statutory authority.21
THE TRIAL COURT DID NOT ERR IN ADMITTING EVIDENCE
OF PRIOR DISCIPLINE.
¶26 The employee argues that he was denied due process because he was not
provided with a specific written statement that his prior evaluations of
spending too much time smoking, reading fictional books, and other incompetence
would be used against him as a reason for termination after the events in
December of 2011. He also then incongruously argues that he should have been
given some type of progressive discipline without termination.22 The GRDA contends that
his notice was adequate and that he was given progressive discipline leading to
termination.23 Rouse's arguments regarding notice are
unconvincing.
¶27 The facts demonstrate that since 2005, Rouse was progressively
disciplined culminating in termination in 2012. In 2006, 2007, 2008, and 2009,
his evaluations reflected his inefficiency, and insubordination. By 2010, the
cumulative effect of these evaluations led to suspension without pay. By 2012,
the cumulative effect of the suspension without pay, coupled with inability to
perform assigned tasks and other significant incidents led to termination.24 To argue
that there was no progressive discipline imposed ignores the facts altogether.
Nevertheless, progressive discipline is not mandated in all causes, nor are
public employers required to prove that some less severe disciplinary act would
be ineffective before the imposition of a more stringent penalty.25 The system
is designed to be conformable to a variety of circumstances and it is not a
rigid program.26
¶28 The minimal statutory notice required by the employer is found in 74 O.S.
2011 §840-6.4 and it provides in pertinent part:

. . .B. The procedures for a pretermination hearing shall be:
1. Notice of a pretermination hearing shall be served by actual delivery
or by certified or registered mail service at least seven (7) calendar days
prior to the scheduled pretermination hearing;
2. Said notice of the pretermination hearing shall state all grounds for
termination and shall include a general summary of evidence or physical
evidence to support each of the stated grounds for termination; . .
.
In the pretermination letter issued to Rouse on January 11, 2012, and
attached to this opinion as an exhibit, Rouse was expressly notified that he had
been disciplined in July of 2010 for a suspension without pay for inefficiency,
misconduct, insubordination and inability to perform his job duties. He knew
exactly why he was suspended in 2010 without pay because he actually had a
pre-suspension hearing at that time, which he participated in and he was
actually suspended without pay. He was expressly notified that this suspension
was one of the reasons he was being terminated in 2012, in addition to the other
enumerated events outlined in the notice. The employee has made no convincing
showing that the statute was not followed nor does he argue that the statutory
directives are on their face inadequate. Accordingly, we must determine that the
trial court did not err in admitting evidence of prior discipline to support its
decision to terminate.
CONCLUSION
¶29 An administrative decision will be affirmed on appeal if it is supported
by substantial evidence27 and is not arbitrary or capricious.28 Pursuant to
74 O.S. 2011 §840-6.5,29 the GRDA was not required to prove that the
employee acted with an element of willfulness or culpable negligence to justify
the termination of its classified employee. The GRDA's reasons for termination
were neither pretexual nor post hoc rationalizations, but were, instead,
supported by substantial evidence. Estoppel was immaterial to this cause.
Because the trial court did not err in admitting evidence of prior discipline,
and the employee was given adequate notice of the reasons for termination, we
affirm the OMPC and the trial court.

OKLAHOMA MERIT PROTECTION COMMISSION AFFIRMED:
TRIAL COURT AFFIRMED.

ALL JUSTICES CONCUR.

FOOTNOTES

1 The
stated issues as raised on appeal in the petition in error filed on March 11,
2014, are as follows:
1. The District Court committed error in its misapplication of the standard
of review of agency decisions, as pronounced in the Oklahoma Administrative
Procedures Act, 75 Oka. Stat. § 322, and simply rubber stamped the Merit
Protection Commission's erroneous, adverse ruling.
2. The District Court committed error in its failure to recognize the clear
evidence in the record that the ALJ exhibited personal bias against Appellant,
classified employee of GRDA.
3. The District Court committed error in its failure to recognize the three
stated reasons given by GRDA for Rouse's termination as being pretextual.
4. The District Court committed error in its failure to recognize the three
stated reasons given by GRDA for Rouse's Termination were nothing more than post
hoc rationalizations of the real reason Rouse was terminated.
5. The District Court committed error in isolating phrase in 74 Okla. Stat.
§840-6.5, and concluding that a classified employee "may be discharged for
misconduct, insubordination, inefficiency, habitual drunkenness, inability to
perform the duties of the position in which employed."
6. The District Court committed error in not reading the statute as a whole
and reading all parts of the statute together, thereby concluding that under 74
Okla. Stat. §840-6.5, a classified employee may be disciplined for "specific
acts or omissions," only when "specific acts or omissions" rise to the level of
"misconduct, insubordination, inefficiency, habitual drunkenness, inability to
perform the duties of the position in which employed."
7. The District Court committed error in holding that the just cause statute
does not require employing agency to prove some level of willfulness or culpable
negligence in relationship to the alleged "specific acts or omissions."
8. The District Court committed error in ignoring the settled law on the
issue of estoppel, upholding Merit Commission's misapplication of the estoppel
doctrine, that Rouse was estopped from challenging his termination by GRDA.
After the court's error as a matter of law, the court then compounded its error
by ruling that petitioner was not prejudiced by the ALJ's ruling on
estoppel.
9. The District Court committed error in upholding the Merit Commission's
error which permitted GRDA to introduce evidence against Rouse, during just
cause hearing which had not been referenced in the 74 Okla. Stat. § 840-6.5 due
process notice.
10. The District Court committed error, as a matter of law, that allowed GRDA
to introduce evidence of prior discipline against classified employee, during
just cause hearing.
11. The District Court committed error in not recognizing that 74 Okla. Stat.
§840-6.5 was intended to be classified employee's due process notice of the
specific charges against classified employee; and that this "due process
required notice which reasonably informs" person that his protected interest
"may be adversely affected." Hagar v. State, 1999 OK CR 35, ¶14, 990 P.2d 894, 898.
12. The District Court committed error in upholding evidentiary decision of
Merit Commission which allowed Counsel for GRDA to introduce evidence of prior
discipline of Appellant, during the "just cause" part of the hearing, without
giving Appellant adequate notice.
13. The District Court committed error in not ruling that GRDA's introduction
of evidence of prior discipline violated Appellant classified employee's most
basic right to constitutional due process.
14. The District Court committed error in upholding the three stated grounds
for terminating Appellant Rouse against Rouse's claim that the language
describing the grounds of termination were far too general to satisfy the
requirements expressed in 74 Okla. Stat. § 840-6.5.
15. The District Court committed error in upholding the three stated grounds
for terminating Appellant Rouse against Rouse's claim that the stated grounds
were not supported by substantial evidence, reading the record as a whole.
16. The District Court committed error in upholding the decision of ALJ in
denying Appellant's offer of exhibit that would add greater clarity to one of
the grounds of GRDA's termination of Rouse.

2 To the
extent that each of its allegations of error were not contained within the
arguments in its brief, they are waived. Parties waive issues by failing to
brief them. Johnson v. Ford Motor Co., 2002 OK 24, ¶ 1, fn. 2, 45 P.3d 86; Burrows v.
Burrows, 1994 OK 129, ¶ 3,
886 P.2d 984; American
First Abstract Co. v. Western Info.
Syst., Inc., 1987 OK
24, ¶ 11, 735 P.2d
1187.

3 74 O.S.
2001 §840-6.5 provides in pertinent part:
C. Any employee in the classified service may be discharged, suspended
without pay for not to exceed sixty (60) calendar days, or demoted by the
agency, department, institution, or officer by whom employed, for misconduct,
insubordination, inefficiency, habitual drunkenness, inability to perform the
duties of the position in which employed, willful violation of the Oklahoma
Personnel Act, the Merit Rules for Employment or of the rules prescribed by the
Oklahoma Merit Protection Commission, conduct unbecoming a public employee,
conviction of a crime involving moral turpitude, or any other just cause.
Employees in the classified service, upon final conviction of, or pleading
guilty or nolo contendere to, a felony shall be discharged if the felony is
job-related pursuant to Section 24.1 of Title 51 of the Oklahoma Statutes.
Before any such action is taken against a permanent classified employee, the
employing agency, department, institution or officer shall provide the employee
with a written statement of the specific acts or omissions that are causes or
reasons for the proposed action, an explanation of the agency's evidence, and an
opportunity to present reasons why the proposed action is improper.

4 Merit
Rule 530:10-11-91 provides:
Conduct of classified employees
(a) Every classified employee shall fulfill to the best of his or her ability
the duties of the office or position conferred upon the employee and shall
behave at all times in a manner befitting the office or position the employee
holds. In performing official activities the classified employee shall pursue
the common good, and, not only be impartial, but act so that there can be no
question of impartiality.
(b) A classified employee shall not engage in any employment, activity or
enterprise which has been determined to be inconsistent, incompatible, or in
conflict with his or her duties as a classified employee or with the duties,
functions or responsibilities of the Appointing Authority by which the person is
employed.
(c) Each Appointing Authority shall determine and prescribe those activities
within applicable laws, which, for employees under its jurisdiction, will be
considered inconsistent, incompatible or in conflict with their duties as
classified employees. In making this determination, the Appointing Authority
shall give consideration to employment, activity or enterprise which:
(1) involves the use for private gain or advantage of state time, facilities,
equipment and supplies; or, the badge, uniform, prestige or influence of one's
state office or employment,or(2) involves receipt or acceptance by the
classified employee of any money or other consideration from anyone, other than
the state, for the performance of an act which the classified employee would be
required or expect to render in the regular course or hours of state employment
or as a part of the duties as a state classified employee, or(3) involves
the performance of an act which may later be subject directly or indirectly to
the control, inspection, review, audit or enforcement by such classified
employee.(d) Each classified employee shall devote full time, attention and
effort to the duties and responsibilities of his or her position during assigned
hours of duty.

5 Title
74 O.S. 2001 §840-6.5, see note 3, supra.

6
Apparently, Rouse is the person who called the DOL and complained. A formal
complaint was never filed, but the DOL did investigate and order some minimal
back pay to some employees. The evidence in the record reflects that, prior to
Rouse's dismissal, no one even knew that he was the one who made the complaint,
although he insists otherwise.

7 Title
75 O.S. 2011 §318 provides in
pertinent part:
A. 1. Any party aggrieved by a final agency order in an individual proceeding
is entitled to certain, speedy, adequate and complete judicial review thereof
pursuant to the provisions of this section and Sections 319, 320, 321, 322 and
323 of this title. . . .
B. 1. The judicial review prescribed by this section for final agency orders,
as to agencies whose final agency orders are made subject to review, under
constitutional or statutory provisions, by appellate proceedings in the Supreme
Court of Oklahoma, shall be afforded by such proceedings taken in accordance
with the procedure and under the conditions otherwise provided by law, but
subject to the applicable provisions of Sections 319 through 324 of this title,
and the rules of the Supreme Court.
2. In all other instances, proceedings for review shall be instituted by
filing a petition, in the district court of the county in which the party
seeking review resides or at the option of such party where the property
interest affected is situated, naming as respondents only the agency, such other
party or parties in the administrative proceeding as may be named by the
petitioner or as otherwise may be allowed by law, within thirty (30) days after
the appellant is notified of the final agency order as provided in Section 312
of this title. . . .

8
State of Oklahoma ex. rel. Oklahoma
Department of Agriculture v. Yanes, 1987 OK 124, ¶20, 755 P.2d 611; Corporation
Commission v. Okla. State Personnel Bd., 1973 OK 94, ¶15, 513 P.2d 116, Pannell v.
Farmers Union Co-Op Gin Assn, 1943 OK 256, ¶8, 138 P.2d 817.

9 In
Cox v. State ex rel. Dept. of
Human Services, 2004
OK 17, ¶1, 87 P.3d 607, we
stated that the factual determination to uphold an employee's discharge was
clearly erroneous in view of the reliable, material, probative and substantially
competent evidence or arbitrary or capricious.
Title 75 O.S. 2011 §322
provides:
(1) In any proceeding for the review of an agency order, the Supreme Court or
the district or superior court, as the case may be, in the exercise of proper
judicial discretion or authority, may set aside or modify the order, or reverse
it and remand it to the agency for further proceedings, if it determines that
the substantial rights of the appellant or petitioner for review have been
prejudiced because the agency findings, inferences, conclusions or decisions,
are:
(a) in violation of constitutional provisions; or(b) in excess of the
statutory authority or jurisdiction of the agency; or(c) made upon unlawful
procedure; or(d) affected by other error of law; or(e) clearly erroneous
in view of the reliable, material, probative and substantial competent evidence,
as defined in Section 10 of this act, including matters properly noticed by the
agency upon examination and consideration of the entire record as submitted; but
without otherwise substituting its judgment as to the weight of the evidence for
that of the agency on question of fact; or(f) arbitrary or capricious;
or(g) because findings of fact, upon issues essential to the decision were
not made although requested.
(2) The reviewing court, also in the exercise of proper judicial discretion
or authority, may remand the case to the agency for the taking and consideration
of further evidence, if it is deemed essential to a proper disposition of the
issue.
(3) The reviewing court shall affirm the order and decision of the agency, if
it is found to be valid and the proceedings are free from prejudicial error to
the appellant.

10
Title 74 O.S. 2011 §840-6.5, see note 3, supra.

11
Title 74 O.S. 2011 §840-6.2 provides in pertinent part:
. . .A. The Oklahoma Merit Protection Commission shall establish standard
internal agency grievance resolution procedures for classified state employees.
The procedures shall encourage prompt and equitable resolution of grievances at
the lowest possible level within the employing agency. . . .. . .E. The
internal agency grievance resolution procedures established by the Oklahoma
Merit Protection Commission shall contain the following minimum
requirements:
1. Procedures encouraging resolution of disputes within the agency quickly,
informally and at the lowest possible level;. . .

12
Title 74 O.S. 2011 §840-6.5 provides in pertinent part:
A. It is the purpose of this section to provide a system for the prompt,
fair, and equitable disposition of appeals by permanent classified employees who
have been demoted, suspended, or discharged. Further, it is the intent of this
section that all decisions rendered as a result of this procedure shall be
confined to the issues submitted for decision and consistent with the applicable
laws and rules.

13
Twin Hills Golf & Country Club,
Inc. v. Town of Forrest Park, 2005 OK 71, ¶6, 123 P.3d 5. Only where the
legislative intent cannot be ascertained from the statutory language, i.e. in
cases of ambiguity or conflict, are rules of statutory construction employed.
Cox v. State ex rel.Oklahoma Dept.
of Human Services, see note 9, supra. Because the statute
is not ambiguous, the employee's argument that the statutory interpretation
doctrines of noscitur a sociis and ejusdem generis is misplaced.
Broadway Clinic v. Liberty Mut. Ins.
Co., 2006 OK 29, ¶¶18-19,
139 P.3d 873 [Noscitur a
sociis asserts that the meaning of an unclear or ambiguous word or phrase
should be determined by the words immediately surrounding it. Ejusdem generis
applies when (1) a statute contains a specific enumeration; (2) the members
of the enumeration suggest a class; (3) the class is not exhausted by the
enumeration; (4) a general reference supplementing the enumeration is made,
usually following the enumeration; and (5) there is not clearly manifested an
intent that the general term be given a broader meaning than the doctrine
requires.]

14
Strong v. State of Oklahoma, ex rel.,
The Oklahoma Police Pension and
Retirement Board, 2005
OK 45, ¶8, 115 P.3d 889;
Keating v. Edmondson, 2001 OK 110, ¶15, 37 P.3d 882; Neer v.
State ex rel. Oklahoma Tax Comm'n, 1999 OK 41, ¶16, 982 P.2d 1071.

15
Buckner v. General Motors Corp., 1988 OK 73, ¶¶9-11, 760 P.2d 803.

16 For
example in Gilmore v. Enogex, Inc, 1994 OK 76, 878 P.2d 360, an at-will employee
attempted to sue his employer for refusing to submit to a random drug test which
was determined not to be a violation of public policy. Pretext is shown by
exposing an employer's weaknesses, implausibilities, inconsistencies,
incoherencies, or contradictions in the employer's proffered legitimate reasons
for its action that a reasonable fact finder could rationally find them unworthy
of credence and hence infer that the employer did not act for the asserted
non-discriminatory reasons. Vaughn v. Epworth Villa, 537
F.3d 1147, 1153 (10th Cir. 2008); Rivera v. City &
County of Denver, 365 F.3d 912, 925 (10th Cir.
2004).

17
Buckner v. General Motors Corp, see note 15,
supra.

18 No
formal complaint was ever filed. Rouse admitted that he made one phone call to
an investigator one time. He did not show that anyone else even knew or
suspected that he was the one who did it.

19 In
addition to Rouse's own testimony admitting to going to the "smoke shack" 3-6
times during his shift and reading books while at work, the CEO testified he did
not even know Rouse before their December 2011 meeting. The Assistant General
Manager and the Plant Superintendent also testified as to Rouse's
inattentiveness and lack of action which was also supported by written
documentation over the years. Rouse insists that these three events were
trivial, arbitrary and capricious, but the substantial evidence shows
otherwise.

20
Strong v. State of Oklahoma, ex rel.,
The Oklahoma Police Pension and
Retirement Board, see note 14, supra at ¶9; Oxley v.
General Atlantic Resources, Inc., 1997 OK 46, ¶19, 936 P.2d 943; Apex
Siding & Roofing Co., v. First
Fed. Savings & Loan Ass'n of
Shawnee, 1956 OK 195, ¶6,
301 P.2d 352. The elements of
equitable estoppel are: 1) a false representation or concealment of facts; 2)
made with actual or constructive knowledge of facts; 3) to a person without
knowledge of, or the means of knowing, those facts; 4) with the intent that it
be acted upon; and 5) the person to whom it was made acted in reliance upon it
to his detriment. Sullivan v. Buckhorn Ranch
Partnership, 2005 OK 41,
31, 119 P.3d 192.

21
Strong v. State of Oklahoma, ex rel.,
The Oklahoma Police Pension and
Retirement Board, see note 14, supra.

22
Rouse also insists that the scope of the December 13, 2011, water chemistry
alarm event were increased. This argument is without merit. Rouse was
specifically notified that the water conditioning event on December 13, 2011,
concerned an alarm regarding a "severe water chemistry condition." Then, even
though other employees, as well as the shift supervisor's log show that water
chemistry conditioning is evaluated by pH level, dissolved oxygen, conductivity
and sodium, apparently, Rouse apparently assumed that "water chemistry
condition" referred only to water's pH level. The notice did not limit
water condition only to a pH level, so Rouse's assumptions were clearly
misplaced. Furthermore, he was allowed to cross examine the other employees and
address the water chemistry condition fully at trial.

23 Due
process requires adequate notice, a realistic opportunity to appear and the
right to participate in a meaningful manner. Bailey v. Campbell,
1991 OK 67, ¶16, 862 P.2d 461.

24
Title 74 O.S. 2011 §840-6.3 provides:
A. Each appointing authority shall establish written policies and procedures
for progressive discipline of employees according to the rules established by
the Oklahoma Merit Protection Commission.
B. Progressive discipline is a system designed to ensure not only the
consistency, impartiality and predictability of discipline, but also the
flexibility to vary penalties if justified by aggravating or mitigating
conditions. Typically, penalties range from verbal warning to discharge, with
intermediate levels of a written warning, suspension or demotion. Absent
mitigating circumstances, repetition of an offense is accompanied by a generally
automatic progression to the next higher level of discipline.
C. Each supervisor shall be responsible for applying discipline when
necessary that is progressive in nature, appropriate for the offense, and
equitable. Each supervisor shall consider aggravating or mitigating
circumstances when determining the proper disciplinary action. Each supervisor
shall use prompt, positive action to avoid more serious disciplinary actions.
The Oklahoma Merit Protection Commission shall promulgate rules to establish the
requirements and guidelines for discipline.
D. The rules shall prohibit supervisors from considering incidents that
occurred longer than four (4) years prior to an offense in order to move to a
higher level of discipline. The prohibition shall not apply to incidents
involving the following types of conduct:
1. Criminal activity;
2. Sexual misconduct and/or harassment;
3. Racially discriminatory behavior and/or harassment;
4. Threats or acts of violence against employees in the workplace; and
5. Drug and/or alcohol use or abuse on the job.

25
Cox v. State ex rel.Oklahoma Dept.
of Human Services, 2004 OK 17, ¶18, 87 P.3d 607.

26
Oklahoma Dept. of Public Safety v.
McCrady, 2007 OK 39, ¶14,
176 P.3d 1194.

27
State of Oklahoma ex. rel. Oklahoma
Department of Agriculture v. Yanes, see note 9,
supra; Corporation Commission v. Okla. State
Personnel Bd., see note 8, supra; Pannell v. Farmers
Union Co-Op Gin Assn, see note 8, supra.

28
Cox v. State ex rel. Dept. of
Human Services, see note 9, supra. Title 75 O.S. 2011 §322 see note 9,
supra.

29
Title 74 O.S. 2011 §840-6.5, see note 3,
supra.

Citationizer© Summary of Documents Citing This Document

Cite
Name
Level

None Found.

Citationizer: Table of Authority

Cite
Name
Level

Oklahoma Court of Criminal Appeals Cases
 CiteNameLevel

 1999 OK CR 35, 990 P.2d 894, 70 OBJ 2766, Hagar v. StateDiscussed
Oklahoma Supreme Court Cases
 CiteNameLevel

 1987 OK 24, 735 P.2d 1187, 58 OBJ 1056, American First Abstract Co. v. Western Information Systems, Inc.Discussed
 1987 OK 124, 755 P.2d 611, 58 OBJ 3426, State ex rel. Oklahoma Dept. of Agriculture v. YanesDiscussed
 1988 OK 73, 760 P.2d 803, 59 OBJ 1801, Buckner v. General Motors Corp.Discussed
 1994 OK 76, 878 P.2d 360, 65 OBJ 2238, Gilmore v. Enogex, Inc.Discussed
 1994 OK 129, 886 P.2d 984, 65 OBJ 3967, Burrows v. BurrowsDiscussed
 1997 OK 46, 936 P.2d 943, 68 OBJ 1275, Oxley v. General Atlantic Resources, Inc.Discussed
 1956 OK 195, 301 P.2d 352, APEX SIDING & ROOF. v. FIRST FED. SAV. & L. ASS'NDiscussed
 2001 OK 110, 37 P.3d 882, 72 OBJ 3672, KEATING v. EDMONDSONDiscussed
 2002 OK 24, 45 P.3d 86, JOHNSON v. FORD MOTOR CO.Discussed
 1973 OK 94, 513 P.2d 116, CORPORATION COM'N v. OKLAHOMA STATE PERSONNEL BD.Discussed
 2004 OK 17, 87 P.3d 607, COX v. STATE ex rel. DEPT. OF HUMAN SERVICESDiscussed at Length
 2005 OK 41, 119 P.3d 192, SULLIVAN v. BUCKHORN RANCH PARTNERSHIPDiscussed
 2005 OK 45, 115 P.3d 889, IN THE MATTER OF STRONGDiscussed
 2005 OK 71, 123 P.3d 5, TWIN HILLS GOLF & COUNTRY CLUB, INC. v. TOWN OF FOREST PARKDiscussed
 2006 OK 29, 139 P.3d 873, BROADWAY CLINIC v. LIBERTY MUTUAL INSURANCE CO.Discussed
 2007 OK 39, 176 P.3d 1194, OKLAHOMA DEPARTMENT OF PUBLIC SAFETY v. McCRADYDiscussed
 2014 OK 39, 326 P.3d 1139, ROUSE v. GRAND RIVER DAM AUTHORITYDiscussed
 1991 OK 67, 862 P.2d 461, Bailey v. CampbellDiscussed
 1999 OK 41, 982 P.2d 1071, 70 OBJ 1551, Neer v. State ex rel. Oklahoma Tax CommissionDiscussed
 1943 OK 256, 138 P.2d 817, 192 Okla. 652, PANNELL v. FARMERS UNION CO-OP. GIN ASS'NDiscussed
Title 75. Statutes and Reports
 CiteNameLevel

 75 O.S. 318, Judicial ReviewCited
 75 O.S. 322, Setting Aside, Modifying, or Reversing of Orders - Remand - AffirmanceDiscussed